654 P.2d 1040

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Malcolm HO'O, Defendant-Appellant.**

**No. 5675.**

Court of Appeals of New Mexico.

Oct. 14, 1982.

Certiorari Denied Nov. 29, 1982.

Jeff Bingaman, Atty. Gen., William Lazar, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Thomas J. Horne, P.C., Albuquerque, for defendant-appellant.

## OPINION

DONNELLY, Judge.

The defendant appeals from his conviction of involuntary manslaughter contrary to § 30–2–3(B), N.M.S.A.1978, and attempted second degree murder, contrary to §§ 30–2–1 and 30–28–1, N.M.S.A.1978.

On appeal the defendant raises four issues: (1) error in allowing the state to cross-examine him concerning his "other than honorable" discharge from military service; (2) error in the admission of photographs taken of the victim during autopsy; (3) failure to give instructions requested by

the defense; and (4) refusal to grant a mistrial based upon alleged improper jury contact. Other issues raised in the docketing statement but not briefed by the defendant on appeal are deemed abandoned. *State v. Gonzales,* 96 N.M. 556, 632 P.2d 1194 (Ct.App.1981). We affirm the trial court and the defendant's convictions.

On August 30, 1981, the defendant and two companions, Mike Baldonado and Bruce LeChey, spent several hours at a night club near Farmington. The victims, Connie and David Roberts, husband and wife, had spent the evening at the same bar and dance hall. The parties all left the club at approximately closing time. In the parking lot, LeChey made a flirtatious remark to Connie Roberts, who was sitting alone in her car. David Roberts approached the car and an argument ensued. The defendant and his two friends, including LeChey, left the area in the defendant's pickup and began traveling toward Farmington.

A short time later the defendant observed a car stopped by the side of the road. After the defendant pulled alongside and stopped to help, it became apparent that the Roberts couple occupied the car. Almost immediately, the argument resumed between LeChey and David Roberts. LeChey began fighting with Mr. Roberts outside the vehicles. Connie Roberts also left her car to hold the passenger door of the defendant's truck closed during the fight to prevent the defendant and Baldonado from joining in the fight against her husband. During the progress of the fight, Connie Roberts began shouting "sick 'em," "get 'em," and "kill 'em" to her untrained doberman pincher who was sitting in her car. At this point the defendant, who had remained in the vehicle during the fight between Mr. Roberts and LeChey, grabbed a pistol he had in his truck and got out of the left side of the vehicle. The defendant fired six shots in rapid succession toward the Roberts car. Both Connie and David Roberts were each shot three times. Mrs. Roberts was mortally wounded and her husband was seriously injured.

The defendant and his two companions then drove away from the scene without rendering aid or notifying authorities. They testified that they did not realize then that anyone had been shot. Other passersby stopped and summoned assistance on behalf of the Roberts.

The defendant was charged with first degree murder and attempted first degree murder. He testified that he acted in defense of LeChey, that he fired the shots in fear of what the dog would do, and that he only intended to shoot the dog. He was convicted of the lesser included offenses of involuntary manslaughter and attempted second degree murder.

I. *Evidence of Defendant's Military Discharge*

■ Whether evidence of a defendant's dishonorable or other than honorable discharge from the military service is admissible in a criminal case is a matter of first impression in New Mexico.

The defendant testified in his own defense at trial. Prior to the presentation of his testimony, the defense counsel asked the trial court to rule on the propriety of any cross-examination by the state concerning the defendant's type of military discharge. After a lengthy bench conference outside the hearing of the jury, the trial court refused to exclude all prosecution inquiry into the nature of the discharge but did restrict questions by the state about the facts and circumstances which led to it. During the conference, the state contended that the defendant had received a less than honorable military discharge because he had acknowledged his guilt of burglary, larceny, and receiving stolen property.

During the defendant's testimony in chief, he made no mention of his military service or the nature of his discharge from the armed services. On cross-examination, the state inquired into the extent and nature of his training and experience with firearms during his military service. Thereafter the state elicited the following testimony from the defendant.

Q: When did you get out of the military?

A: September, 1977.

Q: And, why did you get out?

Defense Attorney: Objection, your honor, I think this is irrelevant—it's a matter of separation from the service.

Court: Overruled, he can answer.

A: Why did I get out? I resigned for the better of the service under a chapter ten discharge.

Q: So what type of discharge did you receive?

A: Under other than honorable.

Q: Under other than honorable?

A: Yes.

On appeal, the defendant argues that the state's inquiry into the type of discharge he received from the military service was irrelevant and constituted prejudicial error. He cites *Casaus v. State,* 94 N.M. 58, 607 P.2d 596 (1980), to support his contention that this inquiry was prejudicial. In *Casaus,* the court held that cross-examination of a defendant concerning his conviction for murder more than ten years earlier constituted proof of conviction of a separate criminal offense contrary to N.M.R.Evid. 609 and was prejudicial error.

Evidence of a defendant's dishonorable discharge from military service or of specific discreditable acts of conduct during his military tenure are generally held inadmissible in a criminal trial when these matters have not been first elicited or put in issue by the defendant. *McNair v. State,* 223 Miss. 83, 77 So.2d 306 (1955); *Andrews v. State,* 172 So.2d 505 (Fla.App.1965); *People v. Cheary,* 48 Cal.2d 301, 309 P.2d 431 (1957); *Harold v. Commonwealth,* 147 Va. 617, 136 S.E. 658 (1927); *see also* Annot. 9 A.L.R.2d 606 (1950); N.M.R.Evid. 608.

Under the circumstances, however, the introduction of this evidence must be deemed harmless. The defendant testified in his own behalf and admitted firing the shots which struck both victims. During his opening statement to the jury, the defense attorney stated that when the defendant heard Mrs. Roberts tell the dog to attack Bruce LeChey, the defendant "reacted by spraying gun fire in the area [of the victims] and to that we have no defense—it

happened. Unfortunately someone was killed and someone was hurt."

The defendant himself testified that he saw his friend Bruce LeChey involved in a scuffle with Roberts and that when he thought the dog would injure his friend he "grabbed the gun and ran outside to the back of the pickup and fired off shots toward the direction of the dog." The defendant further stated that, after he learned Mrs. Roberts had died, he took the pistol he used in the shootings up to the mountains and disposed of it. He said that he did not intend to shoot either of the victims, that his sole intention was to shoot the dog the victims had with them that night.

David Roberts testified that he was fighting with Bruce LeChey beside the two parked vehicles when he heard his wife shout, "David, I've been shot * * *." He said that he began to run from the scene of the fight and was shot while he was running away toward his wife.

Bruce LeChey testified that he was fighting outside the truck and heard three shots. As the three men were driving away from the scene, he asked the defendant whether he had shot anyone; the defendant responded, "Let's just be calm everybody, let's be calm, we're all in this together, everything will be all right." The evidence further indicated that as the defendant drove away from the scene after the shooting, he responded to an inquiry from Mike Baldonado as to whether he had shot anybody, "Yeah, I got them * * * I got them good."

We agree that the admission of evidence of the defendant's other than honorable discharge from the military service under the facts herein was error. However, the facts are distinguishable from those supporting the holding in *Casaus, supra.*

The evidence elicited through the defendant's own testimony was sufficient to support the verdict of the jury without reference to the evidence at issue concerning his discharge from the military service. *State v. Moore,* 94 N.M. 503, 612 P.2d 1314 (1980);

*State v. Vallejos,* 93 N.M. 387, 600 P.2d 839 (Ct.App.), *cert. denied,* 93 N.M. 205, 598 P.2d 1165 (1979); *see also Lutwak v. United States,* 344 U.S. 604, 73 S.Ct. 481, 97 L.Ed. 593 (1953). Other strong and competent admissible evidence supports the jury verdict that the defendant shot the two victims during the altercation. *State v. Moore, supra; State v. Gutierrez,* 93 N.M. 232, 599 P.2d 385 (Ct.App.1979); *State v. Vallejos, supra.* The overwhelming properly admitted testimony and evidence render any error from the questioning of defendant concerning his military discharge harmless. *See* N.M.R.Evid. 103(a); *see also* N.M.R. Crim.P. 51(a).

## II. *Autopsy Photos*

The defendant complains of the admission into evidence of six photographs of the decedent taken during the autopsy. (State's Exhibits 31, 35–39). The photographs consist of a picture of the face of the decedent, a photo of the decedent's torso showing a bullet wound in the middle of the chest, a side view showing a wound in the victim's left side, and three views showing the location of bullet wounds in the left side and arm of the decedent.

 The admission of photographs calculated to arouse the prejudice and passions of the jury which are not reasonably relevant to any of the issues in the case should be excluded. *State v. Upton,* 60 N.M. 205, 290 P.2d 440 (1955). However, photographs are properly admitted within the discretion of the trial court if they are corroborative of other relevant evidence adduced at the trial, even though they may be cumulative. *Id., State v. Valenzuela,* 90 N.M. 25, 559 P.2d 402 (1976).

 Each of the photographs challenged by the defendant was reasonably relevant to material issues in the trial, showing the identity of the victim, Connie Roberts, and the number and location of the wounds inflicted upon her body. Because the defendant asserted that he shot only at the dog, the pictures supported the prosecution's theories of homicide and attempted homicide. The admission of the photo-

graphs was not error and did not constitute a violation of N.M.R.Evid. 403. *See State v. Adams,* 89 N.M. 737, 557 P.2d 586 (Ct. App.), *cert. denied,* 90 N.M. 7, 558 P.2d 619 (1976); *State v. Jones,* 52 N.M. 118, 192 P.2d 559 (1948).

## III. *Instructions Requested by Defense*

The defense requested seven instructions: (1) defense of another, U.J.I.Crim. 41.42; (2) negligence of deceased, U.J.I.Crim. 2.51; (3) sufficient provocation, U.J.I.Crim. 2.22; (4) voluntary manslaughter, U.J.I.Crim. 2.20; (5) voluntary manslaughter, U.J.I. Crim. 2.21; (6) second degree murder, U.J.I. Crim. 2.10; (7) mistake of fact, U.J.I.Crim. 41.15.

The trial court properly refused each of the defendant's requested instructions.

A. The justifiable homicide instruction tendered by the defendant was patterned upon U.J.I.Crim. 41.42, as it existed prior to the September 1, 1981 effective date of the amendment revising the instruction. The trial began on March 8, 1982, after the effective date of the amendment of the jury instruction. The effective date of the amendment, however, was subsequent to the date of the shooting of the two victims on August 30, 1981. The defendant correctly tendered U.J.I.Crim. 41.42 in the form in which it appeared at the time of the commission of the alleged offenses pursuant to *State v. Norush,* 97 N.M. 660, 642 P.2d 1119 (Ct.App.), *cert. denied,* 98 N.M. 50, 644 P.2d 1039 (1982).

 The court properly rejected the tendered instruction because it was not supported by the evidence elicited at trial. Although an accused is entitled to a jury instruction on his theory of the case if evidence exists to support it, the court is not required to give an instruction which has no foundation in the facts. *State v. Gardner,* 85 N.M. 104, 509 P.2d 871, *cert. denied,* 414 U.S. 851, 94 S.Ct. 145, 38 L.Ed.2d 100 (1973); *State v. Rodriguez,* 84 N.M. 60, 499 P.2d 378 (Ct.App.1972). The defendant premised his first requested instruction on the theory that he acted in defense of Bruce

LeChey because David Roberts had created the apprehension of immediate danger of death or great bodily harm to LeChey. The defendant's own testimony differed from the theory and language of the proposed instruction, however; he said that he acted with an intent to shoot only the dog and not either of the Roberts.

The defendant stated in applicable part during direct examination by his counsel:

Q: Malcolm, what was the intention of your firing four or six rounds of ammunition from that weapon on that particular occasion?

A. Well, nothing really materialized through my mind until the fact when she [Mrs. Roberts] said "kill 'em, something, kill 'em and the gesture that Mike went back and he blocked my vision and the doors opening up. And I heard Bruce say "let go of my * * * eye" and I just automatically grabbed the gun and went around because I was in fear that she was sicking the dog on him. And I turned around and fired shots in the general area where the dog was.

Q. Was that your intention to shoot toward the area where the dog was?

A. Yes, and as soon as I fired the shots people were running every which way.

Q. Did you think you had shot anyone at that time?

A. Not at that point.

The defendant testified that he did not realize that he had shot the two victims until some time after the shooting. The defendant's requested instruction No. 1, U.J.I.Crim. 41.42, specified that he acted because there was an appearance of immediate danger of death or great bodily harm to Bruce LeChey "as a result of the aggravated assault and aggravated battery on the said Bruce LeChey by David Roberts." The instruction was not consistent with the defendant's own testimony and the facts adduced by him as to the reasons for the shooting. *See State v. Greenlee,* 33 N.M. 449, 269 P. 331 (1928).

■ B. The defendant tendered U.J.I. Crim. 2.51, an instruction on the negligence of the deceased, Connie Roberts, or a third person, David Roberts, which the trial court refused. The defendant neither explains how the denial of this instruction prejudiced him nor the applicability of the instruction to the facts. There was no error in denial of this instruction.

C. The defendant also complains of the trial court's refusal to give his requested instructions Nos. 3, 4, 5 and 6, defining "sufficient provocation," voluntary manslaughter, and second degree murder. Each of these requested instructions related to the charges against the defendant for the killing of Connie Roberts.

*State v. Reynolds,* 98 N.M. ——, 650 P.2d 811 (N.M.S.Ct., 1982), requires the court to give instructions, if the evidence so warrants, on any offense lesser than that for which the defendant might be convicted. The jury must have a choice, even though it might convict using an instruction for a higher offense and never reach the issues contained in the lesser crime instructions. *Id. Reynolds* is inapplicable to this case, however, since the requested instructions concern a more serious crime than that for which the defendant was convicted.

■ Since the defendant was acquitted of the charges of first degree murder and voluntary manslaughter of Connie Roberts and was convicted solely of the lesser included offense of involuntary manslaughter, the defendant has not shown any prejudice by the court's failure to give his requested instructions Nos. 3–6. *State v. Ramirez,* 84 N.M. 166, 500 P.2d 451 (Ct.App.), *cert. denied,* 84 N.M. 180, 500 P.2d 1303 (1972); *see also State v. Hamilton,* 89 N.M. 746, 557 P.2d 1095 (1976). To establish reversible error based on the court's refusal to give a requested instruction, the party asserting error must show prejudice. *State v. Sanchez,* 58 N.M. 77, 265 P.2d 684 (1954); *State v. Sanders,* 93 N.M. 450, 601 P.2d 83 (Ct.App.1979). Since the defendant was acquitted of the charges to which these requested instructions applied, there is no showing of prejudice in their denial.

D. The defendant's requested instruction No. 7 was based upon the theory that he shot both victims due to his mistake of fact that Bruce LeChey was in danger of being killed or subjected to great bodily harm. U.J.I.Crim. 41.15. The requested instruction read in part:

Evidence has been presented that the defendant believed that Bruce LeChey was in danger of being killed or subjected to great bodily harm. If the defendant acted under an honest and reasonable belief in the existence of those facts, you must find him not guilty.

▮ This requested instruction fails to detail adequately the mistaken facts believed by the defendant. As mentioned in the use note for U.J.I.Crim. 41.15, the party requesting this instruction should describe in the instruction "the facts constituting a mistake of fact." It is insufficient to set forth the defendant's belief that LeChey was in danger of being killed or subjected to great bodily harm without describing the claimed mistake of fact as to the source of the purported harm. Without this specificity, the jury must speculate about both the exact basis for the defendant's claimed mistake of fact and whether the error was predicated upon the acts of either of the victims, both of them, or their dog. Under these facts, the trial court's denial of the instruction cannot be deemed to constitute. error. Viewed in a light most favorable to the defendant, he shot to kill the dog and negligently shot the victims in the process.

## IV. Denial of Mistrial

The defendant's final point on appeal alleges that the trial court erred in refusing to grant a mistrial after counsel for the state entered the jury room during deliberations. The defendant asserts that this act, combined with evidence of state attorney communication with the jury, created an irrebutable presumption of prejudice and required the granting of a mistrial.

The record shows that after the jury commenced deliberations it asked to use the trial exhibits in the jury room. During the trial, the state had used two mannequins, introduced as exhibits, to depict the location of bullet wounds sustained by the victims. When the jury requested that the mannequins be provided for their use and inspection, counsel for the state carried them to the jury room and indicated the method to stand them up and how to prevent them from falling apart. As stated by Val. R. Jolley, one of the prosecuting attorneys:

[T]he baliff informed us that the jury wanted to have the mannequins in the jury room. Since the male mannequin has no stand, and if you pick it up by the arms, the arms will come off, and the mannequin will fall, I picked the mannequin up to show that to the baliff * * * so, I carried the armless mannequin into the jury room and simply told the jury that, to please not pick it up by the arms because they would come off and it would fall, and there was no stand for the male mannequin and so to please lean it against the wall. I saw Mr. Roberts [another prosecutor] carrying the female mannequin into the room. He told the baliff that if you pick up the mannequin it will come apart from the stand and will fall. * * * The mannequins were then both given to the baliff. I left the jury room. Mr. Roberts left the jury room. My only contact and statement to the jurors was to please not pick it up by the arms and to lean it against the wall so it would not fall.

The other counsel for the state, Randall S. Roberts, stated similarly that he had assisted the baliff in taking the mannequins to the jury room and that his sole communication was to indicate how to prevent the female mannequin from falling from its stand. Based upon the statements of the prosecuting attorneys, the trial court denied the defendant's motion for mistrial.

▮ Although any unauthorized contact between the prosecution and the jury is presumptively prejudicial to the defendant, this presumption is not irrebuttable. *State v. Cramer,* 90 N.M. 157, 560 P.2d 948 (Ct. App.), *cert. denied,* 90 N.M. 254, 561 P.2d 1347 (1977); *State v. Alderette,* 86 N.M. 600, 526 P.2d 194 (Ct.App.), *cert. denied,* 86

N.M. 593, 526 P.2d 187 (1974). In each instance, the burden is upon the state to affirmatively demonstrate the absence of any actual prejudice to the defendant. *State v. McCarter,* 93 N.M. 708, 604 P.2d 1242 (1980); *State v. Gutierrez,* 78 N.M. 529, 433 P.2d 508 (Ct.App.1967).

Whether the presumption of prejudice ensuing from any unauthorized contact with the jury has been overcome is an issue which rests in the sound discretion of the trial court. *State v. Gutierrez, supra.* New Mexico does not follow the rule that any unauthorized contact with the jury is per se prejudicial, automatically requiring a mistrial or reversal. *State v. Coulter,* 98 N.M. 768, 652 P.2d 1219 (N.M.Ct.App., 1982,

*cert. granted,* August 19, 1982). The state adequately rebutted the presumption of prejudice here and the trial court properly denied the motion for mistrial.

The conviction and judgment of defendant are affirmed.

IT IS SO ORDERED.

WALTERS, C.J., and LOPEZ, J., concur.