915 P.2d 309

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Joe Angel DUARTE, Defendant– Appellant.**

No. 15581.

Court of Appeals of New Mexico.

Jan. 25, 1996.

Certiorari Denied March 21, 1996.

Tom Udall, Attorney General, Daniel F. Haft, Assistant Attorney General, Santa Fe, for Plaintiff–Appellee.

T. Glenn Ellington, Chief Public Defender, David Henderson, Assistant Appellate Defender, Santa Fe, for Defendant–Appellant.

## OPINION

BUSTAMANTE, Judge.

1. Defendant appeals his convictions for voluntary manslaughter and conspiracy to tamper with evidence, as well as the enhancement of his sentence under the provisions of the habitual-offender statute. There was evidence that Defendant stabbed the victim during a fight arising out of an argument and that all parties involved were intoxicated at the time of the argument. Defendant was charged with second-degree murder, tampering with evidence, and conspiracy to tamper with evidence. Defendant's counsel raised a pre-trial challenge to Defendant's competency to stand trial. After a hearing, the presiding judge found Defendant competent without submitting the issue to a jury. At trial, Defendant was convicted of the lesser-included offense of voluntary manslaughter and of the conspiracy charge. The State then filed a supplemental criminal information under the habitual-offender statute, requesting enhancement of Defendant's sentence. Defendant unsuccessfully challenged the use of his prior convictions for enhancement purposes, arguing that those convictions were constitutionally infirm because he had not been competent at the time he entered into the pleas that led to the convictions and that he had received ineffective assistance of counsel during the prior proceedings. Defendant's sentence was enhanced, and he was sentenced to a total of twenty and one-half years.

2. On appeal, Defendant raises three issues: (1) the jury should have been given the deadly force defense-of-others instruction that he requested; (2) the procedure followed to determine his competency to stand trial was unconstitutional; and (3) his prior convictions were improperly used to enhance his current sentences. We affirm.

## DEADLY FORCE DEFENSE OF ANOTHER

■ 3. Defendant offered, and the trial court refused, a deadly force in defense of another instruction. Defendant argued that if the jury believed he killed the victim, there was evidence that would support a finding that his use of deadly force was justified in that he acted in defense of his girlfriend, Karol Stokes. For Defendant to have been entitled to the deadly force instruction, some evidence tending to establish each of the following factors must have been presented: (a) there was an appearance of immediate danger of death or great bodily harm to Stokes as a result of the victim's actions; (b) Defendant believed that Stokes was in immediate danger of death or great bodily harm from the victim and killed the victim to prevent that death or great bodily harm; and (c) the apparent danger to Stokes would have caused a reasonable person in the same circumstances to act as Defendant did. SCRA 1986, 14–5172 (Recomp.1986). An instruction on a claim of self defense or defense of another should be given if there is any evidence, even slight evidence, to support the claim. *State v. Ungarten*, 115 N.M. 607, 611, 856 P.2d 569, 573 (Ct.App.1993).

■ 4. It is well established that deadly force may not be used in a situation involving simple battery or in a struggle in which there has been no indication that death or great bodily harm could result. *See State v. Heisler*, 58 N.M. 446, 457, 272 P.2d 660, 667 (1954) (refusing to allow participants in hand-and-fist combat to resort to deadly force simply because it appears one or the other is about to lose the fight); *State v. Strother*, 807 S.W.2d 120, 123 (Mo.Ct.App.1991) (where facts indicated nothing more than simple assault situation, defendant who stabbed victim was not entitled to self-defense instruction, despite size differential between victim and defendant); I Wayne R. LaFave and Austin W. Scott, Jr., *Substantive Criminal Law*

§ 5.7, at 649 (1986) (stating it is never reasonable to use deadly force against non-deadly attack).

5. With the above principles in mind, we turn to the facts of this case, viewing them in the light most favorable to Defendant's claim that a deadly force instruction should have been given. There was testimony that the victim was a muscular, well-built man, considerably larger than Defendant. The victim had a reputation as an aggressive bully and a fighter who fought with his hands. He liked to fight when he was intoxicated. Stokes knew of the victim's reputation for being "unpleasant," especially when he was drunk. Defendant had known the victim for a long time, virtually all his life. Defendant's intellectual capabilities are somewhat limited, as he is either of borderline intellect or mildly mentally retarded, and he is functionally illiterate.

6. On the evening of the homicide, the victim had consumed a large amount of beer. The victim was drinking with Stokes and a man named Primo Rogers at a residence where the victim was staying temporarily. Defendant later joined the gathering and the drinking. Stokes was babysitting for her friend, the owner of the residence. The victim had been pressuring Stokes to go out with him instead of with Defendant and was not happy that Defendant had shown up. Stokes and the victim began arguing, with the victim insisting that Stokes and Defendant leave the residence and Stokes insisting that she would stay until her friend returned. The argument grew louder and louder, and the victim more and more forceful, until Stokes and the victim were yelling at each other with the victim shouting at Stokes to "Get out!" Finally, the victim said "All right, let's see who here is man enough to stop me from throwing you out!" Stokes interpreted this as a threat to throw her bodily out of the residence. As the victim made this threat, he started to rise from his seated position. Before he could do so, Defendant attacked the victim and began to stab him.

7. The issue is whether this evidence could raise a reasonable doubt as to whether the use of deadly force was justified. The State initially argues that Defendant did not satisfy the requirement that Defendant must actually have been in fear for Stokes' safety and acted because of that fear. Since Defendant did not testify at the trial, the State maintains that there was no evidence that could support a finding as to Defendant's motivation in attacking the victim. While we recognize that it is more difficult to make the requisite showing of actual fear without testimony from Defendant, we disagree that there was complete failure of proof. As Defendant points out, a jury can infer intent from circumstantial evidence. *See State v. Wood,* 117 N.M. 682, 686, 875 P.2d 1113, 1117 (Ct.App.), *cert. denied,* 117 N.M. 744, 877 P.2d 44 (1994). There was evidence in this case that the victim had a reputation as a fighter and that Defendant had known the victim for a long time. The jury could therefore infer that Defendant knew of the victim's reputation. In addition, Defendant was present during the argument between Stokes and the victim and participated in that argument. He attacked the victim immediately after the victim threatened Stokes and began to make what could have been interpreted as an aggressive move toward her. From this evidence, the jury could have inferred that Defendant's attack was motivated by a desire to protect Stokes from imminent harm. Defendant's failure to testify, therefore, was not fatal to his defense.

8. However, we affirm the trial court's refusal to give the requested instruction because there was no evidence tending to satisfy the reasonableness prong of the deadly force test. Whether or not Defendant actually feared that the victim would inflict death or great bodily harm upon Stokes, he was not entitled to the deadly force instruction unless there was some evidence that his fear was reasonable. *See, e.g., State v. Gallegos,* 104 N.M. 247, 249, 719 P.2d 1268, 1270 (Ct.App.), *cert. quashed* (N.M. June 4, 1986). Under the hybrid test adopted in New Mexico, there must have been some evidence that an objectively reasonable person, put into Defendant's subjective situation, would have thought that Stokes was threatened with death or great bodily harm, and that the use of deadly force was necessary to prevent the

threatened injury. *Id.* at 250, 719 P.2d at 1271 (discussing hybrid test).

9. In support of his claim that there was some evidence tending to establish the reasonableness of his fear, Defendant points to the facts that the victim was quite a bit larger than he was and had a reputation for being a fighter, especially when he was intoxicated. He also emphasizes the escalating tension in the residence and the victim's verbal threat toward Stokes, coupled with his action of starting to rise out of his seated position. Finally, he emphasizes his intellectual deficiencies and maintains that the situation should be seen from the position of a person possessing those deficiencies. We readily acknowledge that this evidence raised a jury question as to whether there was a threat of harm of some sort toward Stokes, as is evidenced by the fact that the non-deadly force defense-of-another instruction was given to the jury. We do not believe, however, that a reasonable person in Defendant's position could have determined that Stokes was faced with a threat of death or great bodily injury and the use of deadly force to prevent the threatened harm was therefore necessary.

10. There was no evidence in this case upon which a reasonable person could base a fear that anything more than a battery was about to take place. The size difference between the victim and Defendant, or between the victim and Stokes, was not an indication that the victim might inflict great bodily harm or death upon Stokes. *Cf. Strother*, 807 S.W.2d at 123. It merely indicated that the victim would probably be able to make good upon his threat to forcibly remove Stokes from the residence and that Defendant would not be successful if he tried to stop the victim. Similarly, the victim did not threaten to kill Stokes—he merely threatened to throw her out of the residence. Defendant's knowledge of the victim's reputation as a fighter does not provide a reasonable basis for his actions. There was no evidence that the victim had seriously injured anyone during any of his fights, or injured anyone at all, for that matter. In addition, there was no evidence that the victim had shown a propensity for violence toward women, or toward Stokes in particular, or had access to a deadly weapon. *Cf. State v. Montano*, 95 N.M. 233, 235, 620 P.2d 887, 889 (Ct.App.1980) (victim had recently been so angry at defendant that he punched a hole in defendant's wall, and a loaded gun was within victim's reach before defendant picked up the gun and shot defendant; deadly force self-defense instruction should have been given). The most that could be said about the victim's reputation was that when he was drunk, he was a bully who liked to fight with his fists. We recognize that in certain circumstances, fists could be considered dangerous weapons capable of inflicting great bodily harm or death. In this case, however, there was no indication that the victim had ever used his fists in such a manner or that he might have been intending to do so at the time Defendant stabbed him. *Cf. Gallegos*, 104 N.M. at 252, 719 P.2d at 1273 (past history of victim's abuse toward defendant, coupled with indication that another episode of abuse was imminent, raised jury question concerning deadly force self-defense issue). Absent such evidence, there was nothing that would indicate to a reasonable person in Defendant's position that anything more than a non-deadly battery was about to take place. Defendant's resort to deadly force to prevent that battery was, therefore, unreasonable as a matter of law, and the trial court correctly refused to give the requested instruction on deadly force defense of another.

■ 11. We note Defendant's argument that his intellectual deficiencies should be considered in deciding the reasonableness issue. The difficulty with doing so is that Defendant has pointed to no evidence indicating that a reasonable person with borderline mental acuity is more likely to perceive a threat or exaggerate a threat than an "average" reasonable person. As far as we know, such a person could be less likely to recognize a danger, or more likely to minimize the danger. The mere fact that Defendant's IQ is borderline, without more, neither adds to nor detracts from the reasonableness of his perceptions and actions.

12. Due to our resolution of this issue, we need not address Defendant's argument that

the failure to give the deadly force instruction tainted his conspiracy conviction as well as his manslaughter conviction.

## COMPETENCY PROCEDURE

■ 13. Defendant challenges the trial court's refusal to submit the question of his competency to a jury. He complains of the procedure currently followed in New Mexico, under which the trial judge decides the issue of competency unless the judge finds there is a reasonable doubt as to that competency. SCRA 1986, 5–602(B)(2) (Repl. 1992). Only if the judge finds reasonable doubt is the competency issue submitted to a jury. In deciding the reasonable-doubt question, the judge weighs the evidence and draws his or her own conclusions from that evidence. *State v. Coates,* 103 N.M. 353, 360–61, 707 P.2d 1163, 1170–71 (1985). On appeal, the judge's determination is reviewed only for an abuse of discretion, viewing the evidence in the light most favorable to the judge's decision. *Id.* at 360, 707 P.2d at 1170. *State v. Lopez,* 91 N.M. 779, 780, 581 P.2d 872, 873 (1978). Defendant maintains that this procedure is unduly restrictive of the right to have a jury determine his competency. He suggests, instead, a procedure under which the trial court would perform a "gatekeeper" function, deciding only whether there is enough evidence to raise a genuine issue of material fact concerning competency. If there is sufficient evidence to do so, the competency question would have to be submitted to a jury.

14. Defendant acknowledges that he did not raise this issue below and raises it now as a matter of fundamental error. He also acknowledges that prior Supreme Court case law, as well as SCRA 5–602(B)(2), are contrary to his position. He therefore asks us to certify this issue to the Supreme Court for decision. We decline his invitation to do so because we do not believe Defendant has raised sufficient doubt about the propriety of the existing procedure to warrant dispensing with the normal appellate process.

■ 15. The standard for competency is met if "defendant understands the nature and significance of the proceedings, has a factual understanding of the charges, and is able to assist his attorney in his defense." *State v. Najar,* 104 N.M. 540, 542, 724 P.2d 249 (Ct.App.), *cert. denied,* 104 N.M. 460, 722 P.2d 1182 (1986). Here, four different experts evaluated Defendant in the course of the competency review. One reported that Defendant had a good understanding of the charges against him, was able to appraise available defenses to those charges, had a good capacity to disclose pertinent facts, and had the ability to maintain appropriate courtroom demeanor. Another opined that Defendant had a good ability to observe, recollect, and articulate, could communicate well in English and follow directions, and could aid his attorney in providing a defense. A third stated that Defendant was able to articulate the accusations and state alternative hypotheses for what might have happened, that there was no indication Defendant would be unmanageable in court, that Defendant would be capable of realistically challenging witnesses, and that he would have no problems testifying relevantly. These three determined that Defendant was competent to stand trial. One expert, Dr. Walters, did testify that Defendant was not competent to stand trial. Given this evidence, we cannot hold that the trial court abused its discretion in determining that Defendant was competent to stand trial.

## HABITUAL–OFFENDER ENHANCEMENT

16. During the habitual-offender proceedings, Defendant challenged the use of his three prior convictions to enhance his current sentence. Defendant maintained that he was incompetent to enter knowing and voluntary guilty pleas in each of the prior proceedings leading to the convictions and that he had received ineffective assistance of counsel in those proceedings because none of his prior attorneys had done anything to have his competency evaluated before he entered the pleas or taken measures (such as drawing pictures or graphs, or creating time lines) to ensure that Defendant would understand the proceedings. In support of his position, Defendant presented his own testimony and the testimony of Dr. Walters, the same expert who had earlier expressed the opinion that

Defendant was incompetent to stand trial. The State presented no evidence in opposition to Defendant's case, instead relying solely on argument.

17. The trial court rejected Defendant's arguments, stating orally that there was no way to go back thirteen years (Defendant's first conviction was in 1981) to determine how much discussion there was prior to Defendant's guilty pleas, and that in the court's opinion, he was ably and competently represented in the prior proceedings. The court dismissed Dr. Walters' testimony by stating that it was essentially the same testimony he had given at trial (in addition to testifying at the pre-trial competency hearing, Dr. Walters testified briefly during the trial). The court also noted that Defendant had received suspended sentences in at least some of the prior proceedings and had thus achieved substantial benefit from his guilty pleas and stated that Defendant's functional illiteracy was not an excuse because Defendant was competent enough to be out in society and functioning. Finally, the judge stated, "As far as I can see, I'm not going to be able to figure out what kind of counsel he had in the prior cases," and that it was late for Defendant to be challenging that. Accordingly, the court held that the prior convictions were available for enhancement purposes.

■ 18. Defendant maintains that the trial court was required to, but did not, weigh the evidence and determine whether his prior guilty pleas were knowing and voluntary and whether he received effective assistance of counsel in the prior proceedings. Defendant also contends that he made a prima facie showing, through his own testimony and that of Dr. Walters, that his guilty pleas were constitutionally defective, and that the burden should have shifted to the State to produce evidence rebutting that prima facie showing.

19. We agree with Defendant that the court was required to examine the constitutional validity of prior convictions, including the voluntariness of the pleas leading to the convictions, if the convictions were adequately challenged during habitual offender proceedings. While we recognize, as did the trial court, that it is difficult to reconstruct

events that might have occurred many years ago, our case law requires the attempt. *See State v. Moser,* 78 N.M. 212, 214, 430 P.2d 106, 108 (1967) (right to assistance of counsel is right to effective assistance of counsel, and effectiveness of counsel issue may be raised in post-conviction challenge to habitual-offender enhancement), *overruled on other grounds by State v. Orona,* 98 N.M. 668, 651 P.2d 1312 (Ct.App.1982); *State v. Dalrymple,* 75 N.M. 514, 521, 407 P.2d 356, 361 (1965) (despite practical difficulties that could arise as a result, defendant in habitual offender proceedings must be allowed to challenge the adequacy of representation received during prior prosecutions leading to convictions). Had the trial court refused to consider Defendant's challenges to the effectiveness of the representation he received during the prior criminal prosecutions, that refusal would have constituted error.

■ 20. We do not believe, however, that the trial court rejected Defendant's challenges out of hand, without analyzing the evidence. Defendant was allowed to present his evidence on the issue, and his presentation was not restricted or truncated in any manner. In addition, the trial court reviewed at least some of the material presented concerning the prior proceedings, such as the judgments and sentences resulting from Defendant's pleas. The court also discussed Dr. Walters' testimony about Defendant's functional illiteracy and the court's reservations about that testimony and its import. Given the record below, it is reasonable to interpret the judge's comments concerning the difficulty of reconstructing past proceedings as comments indicating that there was not enough evidence to convince the court, rather than as a blanket rejection of the possibility of challenging the prior convictions. We will therefore interpret the comments in that manner. *See State v. Scussel,* 117 N.M. 241, 243, 871 P.2d 5, 7 (Ct.App.) (verbal comments of trial judge may not be used as basis for reversal), *cert. denied,* 117 N.M. 215, 870 P.2d 753 (1994); *State v. Gonzales,* 105 N.M. 238, 243, 731 P.2d 381, 386 (Ct.App.1986) (there is a presumption of regularity and rectitude in the proceedings be-

low), *cert. quashed,* 105 N.M. 211, 730 P.2d 1193 (1987).

21. The question then becomes whether the judge's decision was supported by substantial evidence. Defendant maintains that he presented sufficient evidence to show that he was incompetent to enter pleas in his prior cases and that his attorneys did not take any action to review, establish, or ameliorate his incompetency. Alternatively, Defendant argues that at the least he presented sufficient evidence of his incompetency to shift the burden of persuasion to the State to prove the validity of the prior conviction. Defendant then argues that since the State presented no evidence to rebut his showing, the trial court's decision was not supported by any evidence.

22. We disagree with Defendant. The validity of prior convictions is presumed until a defendant produces evidence reasonably tending to establish their invalidity. If the constitutional invalidity of prior convictions is not adequately shown, the burden of persuasion does not shift, and the State has no obligation to come forward with evidence. *See State v. Valdez,* 107 N.M. 642, 643, 763 P.2d 76, 77 (Ct.App.1988). A defendant must present evidence reasonably tending to show the invalidity of the convictions; it is not enough to simply challenge the adequacy of the prior proceedings. *See State v. O'Neil,* 91 N.M. 727, 728–29, 580 P.2d 495, 496–97 (Ct.App.1978) (burden of persuasion on state is same in competency cases as in insanity cases, and defendant in both cases has burden of initially going forward with evidence). Defendant's showing in this case was deficient both in its attempt to establish that Defendant was incompetent to enter the prior pleas and in its attempt to establish that his pleas were not in fact knowing and voluntary. Establishing either would have been sufficient to prove the invalidity of Defendant's prior convictions. *See Godinez v. Moran,* 509 U.S. 389, 400–03, 113 S.Ct. 2680, 2687–88, 125 L.Ed.2d 321 (1993) (standard for competency to stand trial and competency to plead guilty is same; to plead guilty, however, a defendant must not only be competent, but must knowingly and voluntarily

enter plea without coercion and with actual understanding).

23. Defendant's evidence concerning the competency prong of the *Godinez* analysis consisted of Dr. Walters' testimony. Dr. Walters stated, in essence, that Defendant was not now competent to either enter a plea or to stand trial; that his condition had not improved since his first conviction, but had either stayed the same or become worse, due to Defendant's drug and alcohol abuse; and that Defendant had never been competent to stand trial or enter a plea. This was essentially the same evidence relied on by Defendant during the competency proceedings, extended to cover the prior convictions. As the State pointed out below, however, the judge previously assigned to the case had already decided that Defendant was competent to stand trial, despite Dr. Walters' testimony and opinion. Even though this determination was made by a different district court judge, who did not preside over the trial or the habitual-offender proceedings, the trial court was entitled to rely on that determination, under the doctrine of law of the case. *Cf. State v. Bejar,* 104 N.M. 138, 139–40, 717 P.2d 591, 592–93 (Ct.App.1985) (applying law of the case to establish an enhancement proceeding), *cert. quashed,* 104 N.M. 54, 716 P.2d 245 (1986); *see also United States v. Todd,* 920 F.2d 399, 403 (6th Cir.1990) (under law of the case, a decision on an issue made at one stage of a case should be given effect in successive stages of the same case to prevent continued litigation of the same issue).

24. Defendant's argument here presents one novel wrinkle. That is, Defendant argues that each of the experts who evaluated him (other than Dr. Watson) acknowledged that Defendant would have some difficulty dealing with the legal process because of his mental deficiencies, and that each of them suggested various measures which could be taken to help him understand and appreciate what was occurring as the trial proceeded. Defendant now argues that none of those ameliorative measures were even considered, much less taken in the three prior pleas and therefore, in light of the total failure of his prior counsel and courts to

account for and deal with the deficiencies recognized by the experts, his competency during the prior pleas was sufficiently called into question to shift the burden of persuasion to the State. The difficulty with Defendant's argument is that it fails to acknowledge that none of the evaluations (except Dr. Watson's) stated that he could be deemed competent only if he was provided the help they suggested. Each of the evaluations concluded that Defendant was competent, even if ameliorative measures were not taken.

25. The evaluations before the court on the competency issue can be summarized as follows: (1) Defendant's level of competency was no worse during his prior proceedings than the current case and was probably better; (2) Defendant was competent to stand trial in the current case. Given these evaluations, the trial court was justified in rejecting Dr. Walters' testimony and giving little credence to the claim that Defendant had not been competent to enter his pleas in the prior cases. In turn, the judge was entitled to find that Defendant's prior attorneys were not ineffective in failing to request competency evaluations or to take special precautions to ensure that Defendant understood what was happening to him. *See State v. Sanchez,* 98 N.M. 781, 783, 652 P.2d 1232, 1234 (Ct. App.1982) (failure to file a non-meritorious motion cannot be declared ineffective assistance).

26. Defendant could still have prevailed on his claim if he had presented convincing evidence showing that his prior pleas were not knowing and voluntary. His evidence on that issue, however, was not adequate. Defendant did not testify that he did not understand the consequences of his pleas. He did not state that he did not know what the charges were, or what the possible punishment he faced was. *See State v. Harris,* 101 N.M. 12, 16–17, 677 P.2d 625, 629–30 (Ct.App.1984) (factors to be considered in inquiry as to voluntariness of plea). He testified only that his attorneys did not read the plea and disposition agreements to him, that he did not read them himself because he cannot read or write, that his lawyers used big words, and that the lawyers never drew pictures or graphs or time lines to help him

understand. As was the case with the competency evidence, the trial court was entitled to discount this evidence and find it outweighed by the other evidence, including the fact that the pleas resulted from plea bargains that appeared advantageous to Defendant as well as the express recitations of voluntariness in the prior cases. *See id.* at 17, 677 P.2d at 630 (relying on similar evidence to contradict Defendant's subsequent claims of involuntariness of plea).

27. We sum up our holding on this issue by stating that despite the State's failure to offer evidence in opposition to Defendant's showing, the court was entitled to reject that showing under the circumstances of this case. It simply was not enough for Defendant to recycle competency evidence already rejected by another judge, to try in effect to have the court reverse the prior determination. It was also not enough to offer his own testimony that did not address the major questions involved in a voluntariness determination.

## CONCLUSION

28. Based on the foregoing, we affirm Defendant's convictions and the enhancement of his sentence.

29. **IT IS SO ORDERED.**

APODACA, C.J., and PICKARD, J., concur.