2001-NMCA-021

22 P.3d 689

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Annette GALLEGOS, Defendant–
Appellant.**

No. 20,630.

Court of Appeals of New Mexico.

April 3, 2001.

Certiorari Denied, No. 26,932,
May 29, 2001.

Patricia A. Madrid, Attorney General, Ann M. Harvey, Assistant Attorney General, Santa Fe, NM, for Appellee.

Lee DesChamps, Ranchos de Taos, NM, for Appellant.

## OPINION

FRY, Judge.

{1} Defendant Annette Gallegos appeals from a conviction of involuntary manslaughter, contrary to NMSA 1978, § 30–2–3(B) (1994). She argues that the district court erroneously refused to instruct the jury on the theory of defense of another. We hold that Defendant was entitled to a jury instruction on this theory, and we therefore reverse and remand for a new trial.

### BACKGROUND

{2} On January 26, 1998, Defendant and her husband, Roger Gallegos (Husband), were drinking in their mobile home with four other individuals. After several hours, three of the guests became combative and one of them, Samuel Mascarenas (Victim), punched Defendant in the face. At this point, Defendant and Husband asked the three men to leave. Husband and Defendant escorted the three, as they continued to argue, out of the home into the front yard where Husband, the other three men, and Defendant began a physical altercation. In the course of the altercation, Husband was stabbed twice in the left shoulder.

{3} Husband yelled that he had been stabbed. It was unclear to Defendant which of the three men had wielded the knife, although she assumed it was Jonathan Sandoval. At this point, Defendant ran back into the residence and retrieved a pistol. She walked back through the entry door onto the porch, intending to shoot the gun up in the air in order to stop the fight. Before she could do anything, however, the gun fired and the bullet struck Victim in the head. Victim died a short time later. Soon after the incident, law enforcement officials administered a blood alcohol content (BAC) test to Defendant which indicated that her BAC was .12.

{4} Defendant testified that she had gone inside to retrieve the pistol because she was fearful that the men would not stop beating Husband and that they would continue to stab him. She said she was afraid "they would continue with Roger, then come and get me, and then my girls." She testified further that her intent at the time she retrieved the pistol was to go back out onto the porch and fire a shot into the air to scare the men and break up the fight. Although one witness testified that Defendant aimed the gun at a fleeing combatant, Defendant testified that she never took aim and did not realize the gun had fired until someone shouted that she had shot Victim. She said she did not intend for the gun to go off when it did.

{5} At trial, Defendant submitted a jury instruction based on UJI 14–5172 NMRA 2001 (justifiable homicide; defense of another). Although it is not entirely clear from the record, the district court apparently refused the tendered instruction on two grounds: (1) Defendant's testimony that the shooting was accidental was inconsistent with the theory of defense of another which presupposes an intentional act; and (2) even if defense of another were a viable theory, Defendant's use of deadly force was unreasonable as a matter of law. The jury convicted Defendant of the only crime charged, involuntary manslaughter, and this appeal followed.

### DISCUSSION

#### A. Standard of Review

{6} The propriety of jury instructions given or denied is a mixed question of

law and fact that we review de novo. *State v. Salazar*, 1997–NMSC–044, ¶ 49, 123 N.M. 778, 945 P.2d 996. "An instruction on a claim of self-defense or defense of another should be given if there is any evidence, even slight evidence, to support the claim." *State v. Duarte*, 1996–NMCA–038, ¶ 3, 121 N.M. 553, 915 P.2d 309. "Failure to give an instruction which is warranted by the evidence is not harmless error." *Salazar*, 1997–NMSC–044, ¶ 50, 123 N.M. 778, 945 P.2d 996.

## B. Inconsistency of Charge and Defense

{7} We note at the outset that the case law and commentary treat "defense of another" and "self-defense" as virtually identical for purposes of analysis. *See* UJI 14–5172 Committee Commentary (defense of another instruction cross-referencing self-defense instruction's Committee Commentary); *Duarte*, 1996–NMCA–038, ¶ 10, 121 N.M. 553, 915 P.2d 309 (referring to self-defense theory in analyzing propriety of instruction on defense of another). Therefore, for convenience, in this opinion we will use the term "self-defense" interchangeably with "defense of another."

{8} The State argues that Defendant was not entitled to a self-defense instruction because her intent was to fire a warning shot, not to shoot the man she perceived to be attacking her husband. The district court reasoned that, because self-defense requires an intent to do something in order to prevent injury or death, it is inconsistent with involuntary manslaughter, which is the charge for an accidental killing. In other words, Defendant could not have both intended to shoot the victim and, at the same time, shoot the victim accidentally. Although it is understandable that the district court found an intentional act of self-defense to be inconsistent with a claim of accidental shooting, we conclude that the jury should have been permitted to resolve the tension between the two.

{9} It is well settled that "[s]elf-defense [or defense of another] is a justification to all homicides and results in acquittal rather than mitigation." *State v. Abeyta*, 120 N.M. 233, 239, 901 P.2d 164, 170 (1995),

*abrogated on other grounds by State v. Campos*, 122 N.M. 148, 158 n. 4, 921 P.2d 1266, 1276 n. 4 (1996). In order for the jury to acquit the defendant, the defendant must introduce evidence that will raise in the minds of the jurors a reasonable doubt that the killing was not justified by self-defense or by defense of another. *State v. Parish*, 118 N.M. 39, 44, 878 P.2d 988, 993 (1994). Defense of another contains three elements: (1) there was an appearance of death or great bodily harm to a person; (2) the defendant believed the person was in immediate danger of death or great bodily harm from the victim and killed the victim to prevent the death or great bodily harm; and (3) the apparent danger "would have caused a reasonable person in the same circumstances to act as the defendant did." UJI 14–5172. It is well-settled law that the State bears the burden of proving beyond a reasonable doubt that the Defendant did not act in self-defense or in defense of another. *Parish*, 118 N.M. at 44, 878 P.2d at 993.

{10} The legislature has defined involuntary manslaughter as "manslaughter committed in the commission of an unlawful act not amounting to felony, or in the commission of a lawful act which might produce death in an unlawful manner or without due caution or circumspection." NMSA 1978, § 30–2–3(B) (1994). Thus, the *mens rea* for involuntary manslaughter is criminal negligence. *State v. Yarborough*, 1996–NMSC–068, ¶ 20, 122 N.M. 596, 930 P.2d 131.

{11} Several courts in other jurisdictions agree with the district court in the instant case and hold that involuntary manslaughter and self-defense are mutually exclusive. For example, in *State v. Warren*, 5 Kan.App.2d 754, 624 P.2d 476 (1981), the defendant and the victim were drinking in a bar and began to argue. The argument moved outside, and, according to the defendant's testimony, the victim knocked defendant to the ground, whereupon defendant removed a gun from her boot. Although she did not recall pulling the trigger, she recalled hearing two shots. *Id.* at 477–78. On appeal, the court held that the trial court had erroneously instructed the jury that it could find defendant guilty of involuntary manslaughter if it found that she

unintentionally killed the victim while acting in self-defense in a wanton manner. The appellate court stated that the instruction was improper because it is a legal impossibility to act in self-defense *and* at the same time act in reckless disregard of, or indifference to, the consequences of one's actions. *Id.* at 480; *accord State v. Godfrey,* 37 N.C.App. 452, 246 S.E.2d 156 (1978); *Grimes v. McAnulty,* 957 S.W.2d 223 (Ky.1997).

{12} We decline to follow this authority. It is entirely plausible that a person could act intentionally in self-defense and at the same time achieve an unintended result. Numerous other jurisdictions agree with our conclusion. For example, in *People v. Robinson,* 163 Ill.App.3d 754, 114 Ill.Dec. 898, 516 N.E.2d 1292 (1987), the defendant testified that, in the course of an argument with the victim, the victim began to shout at the defendant, defendant became frightened, and the victim's companion pulled out a shotgun. Defendant grabbed for the gun which fell to the ground and discharged, striking the victim. *Id.,* 114 Ill.Dec. 898, 516 N.E.2d at 1297. The trial court refused defendant's tendered self-defense instruction on the ground that the defense was inconsistent with defendant's claim that the shooting was accidental. *Id.* The appellate court reversed, holding that defendant was entitled to a self-defense instruction. *Id.,* 114 Ill.Dec. 898, 516 N.E.2d at 1305. "The testimony of fright, defensive motive, shotgun, and struggle, if believed by the jury, would have been sufficient to support a finding of self-defense. . . . Moreover, the allegedly accidental nature of the ultimate gunshot does not vitiate the self-defense evidence as to the struggle that immediately preceded it." *Id.,* 114 Ill.Dec. 898, 516 N.E.2d at 1304–05; *see also Jordan v. State,* 782 S.W.2d 524 (Tex.Ct.App.1989) ("The right of self-defense attaches when an accused finds himself in a situation causing him to have a reasonable expectation or fear of death or serious bodily injury, . . . and this right of self-defense is not lost simply because the accused claims the gun discharged accidentally.") (internal quotation marks and citations omitted; quoting *Merritt v. State,* 85 Tex.Crim. 565, 213 S.W. 941, 942 (App. 1919)); *In re Smith,* 396 Pa.Super. 624, 579 A.2d 889, 897 (1990) ("Self-defense, if justifiable, is a complete defense to any criminal homicide, whether it be murder, third degree murder, voluntary manslaughter or involuntary manslaughter.")

{13} Thus, pursuant to this line of reasoning, a defendant is entitled to a self-defense instruction if he or she introduces evidence from which the jury could reasonably find that the killing resulted from the threats or provocation that preceded it, even if the ultimate injury occurred accidentally. *See Robinson,* 114 Ill.Dec. 898, 516 N.E.2d at 1303.

{14} Homicide is justifiable if the killer acted reasonably in self-defense. *Abeyta,* 120 N.M. at 239, 901 P.2d at 170. We see no reason why this should be true when the defendant is charged with murder and not true when the defendant is charged with a lesser degree of homicide such as involuntary manslaughter. If a defendant presents any evidence supporting a self-defense theory, then the jury should be instructed on that theory. *State v. Lopez,* 2000–NMSC–003, ¶ 23, 128 N.M. 410, 993 P.2d 727. A jury given a self-defense instruction can resolve any anomalies in the circumstances surrounding the homicide, including the question of whether the defendant accidentally killed the victim while defending himself or another.

{15} In the present case, had the jury been properly instructed, Defendant should have been acquitted of all homicide charges only if she raised a reasonable doubt in the minds of the jury by arguing that: (1) there was an appearance of immediate danger or great bodily harm to Husband as a result of Victim's stabbing of Husband; (2) Defendant believed Husband was in immediate danger and killed Victim to prevent the death or serious injury; and (3) the apparent danger would have caused a reasonable person in the same circumstances to act as Defendant did. The evidence suggesting that she may not have known whether it was Victim who stabbed Husband or that she did not intend to fire the gun at Victim or anyone else is evidence relevant to the analysis of self-defense. For example, if the jury found that the gun discharged accidentally due to some

negligence on Defendant's part, it could also find that a reasonable person in the same circumstances would have taken care that the gun did not discharge. Therefore, Defendant's self-defense theory would fail, and the jury could convict her of the crime charged-involuntary manslaughter. The jury could also reject the self-defense theory if it found that Defendant knew that someone other than Victim stabbed Husband. Thus, the anomalies in the evidence that troubled the district court will be resolved by the jury when it is properly instructed.

{16} The trial court apparently relied on *Abeyta* in rejecting Defendant's instruction on defense of another. *Abeyta* is distinguishable because there, the court held that proof of "imperfect self-defense" (defending oneself by using excessive force) could not mitigate a murder charge to involuntary manslaughter. *Id.* at 242, 901 P.2d at 173. By contrast, our concern is whether self-defense, imperfect or otherwise, can be raised as a defense to an initial charge of involuntary manslaughter. *Cf. id.* at 242, 901 P.2d at 173 ("While a claim of imperfect self-defense does not give rise to the need for an involuntary manslaughter instruction, a claim of accidental shooting might.")

{17} The present case is also distinguishable from *State v. Ho'o*, 99 N.M. 140, 654 P.2d 1040 (Ct.App.1982). In that case the court held that the trial court properly refused an instruction on defense of another where the defendant testified that he shot in the direction of the victims' dog out of fear that the dog would attack the defendant's friend. The shot missed the dog and hit the victims. *Id.* at 145, 654 P.2d at 1045. The defendant's testimony-that he perceived the dog as the danger—was inconsistent with the self-defense jury instruction, which presupposes that the victim is the person the defendant perceives as creating the danger of great bodily harm to another. *Id.* By contrast, Defendant here presented evidence from which a reasonable jury could infer that Defendant perceived that Victim posed a danger to Husband.

■ {18} We hold that a defendant charged with involuntary homicide can raise the theory of self-defense. Were we to hold otherwise, a person charged with first degree murder would conceivably be in a better position than a person charged with involuntary manslaughter. The former would be acquitted if the evidence established self-defense, while the latter, tendering the same evidence of self-defense, might yet be convicted. Such a result would be untenable.

## C. Reasonable Fear of Danger and Degree of Force

■ {19} The State also argues that, even if self-defense is available as a defense to involuntary manslaughter, Defendant failed to present sufficient evidence to support a jury instruction because she did not establish that she reasonably feared that Husband faced immediate death or great bodily harm. We disagree. Andrew Martinez, one of the combatants in the affray that night, and Defendant both testified that Defendant did not go get the gun until after Husband said he had been stabbed. There was evidence that Husband was bleeding as a result of the stabbing, that his sweater was soaked with blood, and that he raised a blood-covered hand to show the extent of his injury. This evidence was sufficient to permit the jury to find that Defendant reasonably believed Husband was in immediate danger of serious injury or death. *See State v. Allen*, 2000–NMSC–002, ¶ 66, 128 N.M. 482, 994 P.2d 728 (holding that jury could have reasonably inferred from evidence presented at trial that defendant inflicted great bodily harm on victim).

{20} The same evidence refutes the State's argument that Defendant's use of deadly force was unreasonable. Although deadly force may not be used in a situation where there is no indication that death or great bodily harm is imminent, *Duarte*, 1996–NMCA–038, ¶ 4, 121 N.M. 553, 915 P.2d 309, the evidence that Husband had been stabbed and was bleeding could foreseeably allow a jury to conclude that Defendant's use of a gun was reasonable under the circumstances. The jury should have been allowed to consider the question of reasonableness.

## CONCLUSION

{21} We hold that Defendant was entitled to a jury instruction on her theory of defense of another. We therefore reverse Defendant's conviction and remand for a new trial on the charge of involuntary manslaughter.

{22} **IT IS SO ORDERED.**

WE CONCUR: A. JOSEPH ALARID, Judge, MICHAEL D. BUSTAMANTE, Judge.