Certiorari Denied, April 5, 2016, No. S-1-SC-35793

IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number:  2016-NMCA-042

Filing Date:  February 16, 2016

Docket No. 33,564

STATE OF NEW MEXICO,

      Plaintiff-Appellee,

v.

REQUILDO CARDENAS,

      Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF TAOS COUNTY
Sarah C. Backus, District Judge

Hector H. Balderas, Attorney General
Santa Fe, NM
M. Victoria Wilson, Assistant Attorney General
Albuquerque, NM

for Appellee

Alan Maestas Law Office, P.C.
Kathryn J. Hardy
Alan H. Maestas
Taos, NM

for Appellant

## OPINION

**KENNEDY, Judge.**

**{1}**    A formal opinion in this matter was filed on February 2, 2016.  We hereby withdraw that opinion and substitute it with this Opinion to correct an oversight. The victim was referred to as "Matthew Lucero" in the preceding opinion, and the correct name of victim

is "Matthew Lujan."

{2}     Defendant shot and killed an unknown intruder, who he later discovered was his friend, by firing a single fatal shot through his front door in the early hours of the morning. Defendant appeals the district court's refusal to give a defense of habitation instruction as well as an involuntary manslaughter instruction. We conclude that adequate evidence was presented to warrant the giving of both. We therefore reverse.

## I.     BACKGROUND

{3}     Matthew Lujan and Defendant, Requildo Cardenas, were close friends. At approximately 1:30 a.m., on July 5, 2012, Lujan was involved in a fight at a party. Enraged by the fight, Lujan left the party and drove immediately to Defendant's home. Lujan arrived at Defendant's home, opened the screen door, and began knocking and pounding on the door within. Lujan's actions were loud enough to rouse Defendant from sleep. Defendant armed himself and demanded that the visitor identify himself. Defendant received no answer in response to his demand, and the intruder continued pounding on the door. Defendant fired a single shot through the front door, which killed Lujan. When Defendant fired the fatal shot, Lujan's identity was unknown to him.

{4}     Defendant was tried for voluntary manslaughter.[1] He requested jury instructions on defense of habitation and involuntary manslaughter. The district court denied the instructions. Defendant was found guilty of voluntary manslaughter. Defendant now appeals his conviction, asserting that the district court erred in denying his requested instructions on defense of habitation and involuntary manslaughter.

## II.     DISCUSSION

{5}     Whether a jury instruction was properly denied is a mixed question of law and fact that we review de novo. *State v. Guerra*, 2012-NMSC-014, ¶ 13, 278 P.3d 1031. " 'When considering a defendant's requested instructions, we view the evidence in the light most favorable to the giving of the requested instruction[s].' " *State v. Skippings*, 2011-NMSC-021, ¶ 10, 150 N.M. 216, 258 P.3d 1008 (quoting *State v. Boyett*, 2008-NMSC-030, ¶ 12, 144 N.M. 184, 185 P.3d 355). While "[a] defendant is entitled to an instruction on his or her theory of the case if evidence has been presented that is sufficient to allow reasonable minds to differ as to all elements of the offense[,]" the failure to instruct the jury on a defendant's theory of the case is reversible error only if there is evidence to support giving the instruction. *Boyett*, 2008-NMSC-030, ¶ 12 (internal quotation marks and citation omitted).

---

[1]During a previous trial, a jury acquitted Defendant of second degree murder, but it could not reach a verdict on the voluntary manslaughter charge. The district court declared a mistrial, and the case went to trial again based solely on the voluntary manslaughter charge.

2

A defendant charged with involuntary homicide may present a theory of self-defense. *State v. Gallegos*, 2001-NMCA-021, ¶ 18, 130 N.M. 221, 22 P.3d 689.

## A. Defense of Habitation

**{6}** Defense of habitation contains both a subjective and an objective element; the parties acknowledge this. *Cf. State v. Coffin*, 1999-NMSC-038, ¶ 15, 128 N.M. 192, 991 P.2d 477 (indicating self-defense is made up of both a subjective standard that focuses on the perception of the defendant at the time of the incident and an objective standard that focuses on how a reasonable person in the same situation would have acted). The subjective element allows for the use of deadly force where "[i]t appeared to the defendant that the commission of [a violent felony] was immediately at hand and that it was necessary to kill the intruder to prevent the commission of [the violent felony]." UJI 14-5170 NMRA; *Boyett*, 2008-NMSC-030, ¶ 21 (requiring felony, in defense of habitation context, to be a *violent* felony). In evaluating this element, it is necessary to look to the subjective belief of the defendant. The objective element requires that "[a] reasonable person in the same circumstances as the defendant would have acted as the defendant did." UJI 14-5170.

**{7}** Our Supreme Court's opinion in *Boyett* sought to clarify the law governing defense of habitation. 2008-NMSC-030, ¶¶ 9, 11. The *Boyett* court acknowledged that, although defense of habitation applies to the prevention of a felony in the home, felonies no longer solely encompass "forcible and atrocious" crimes. *Id.* ¶ 20 (internal quotation marks and citation omitted). As a result, the Court endeavored to clarify what qualifies as a "felony" in the defense of habitation context. *Id.* The Court concluded, based on applicable precedent, that a " 'felony' in the defense of habitation context is properly limited to those felonies involving violence." *Id.* ¶ 21 (stating that a felony must result "in violence against the occupants were it not prevented"). The Court reasoned that, using this clarification, an instruction on defense of habitation would be warranted "if some evidence reasonably tended to show that [the defendant] killed [the v]ictim to prevent her from forcing entry into his home and committing a violent felony once inside." *Id.* ¶ 22. The Court looked to the evidence presented in the case and concluded that an instruction on defense of habitation was not warranted because there was no evidence that the victim was endeavoring to enter the home by violence or intended to do violence on those inside. *Id.* ¶ 23. The Court acknowledged that, assuming the defendant held a reasonable belief that the victim intended to commit a felony in his home, defense of habitation would justify the defendant's actions "only if he could show that [the v]ictim was attempting to force entry to his home." *Id.* Thus, if there is evidence that the victim is trying to break through the defendant's front door at the time he kills the victim, defense of habitation applies. *Id.*

**{8}** The district court in this case seems to have interpreted *Boyett* to require an analysis of the intruder's intent for the subjective element of defense of habitation, rather than solely on Defendant's perception of the intruder's actions and intentions. The State asserts that the defense of habitation instruction was not warranted because there was no evidence that "the commission of [a violent felony] was immediately at hand." UJI 14-5170. The State also

3

asserts that, without evidence that Defendant intended to kill Lujan, no evidence existed to support the assertion that Defendant believed "it was necessary to kill [Lujan] to prevent the commission of [the violent felony.]" *Id.* We address each argument in turn.

## 1.      Evidence of a Violent Felony

**{9}**      Perhaps following the district court's ruling, the State suggests that in order to satisfy the subjective prong of defense of habitation, which requires Defendant to believe that the commission of a violent felony was immediately at hand, there must have been evidence that Lujan intended to commit a violent felony within Defendant's home. In support of this suggestion, the State cites to *Boyett* and suggests that by requiring a certain type of felony—namely, a violent one—the Court super-imposed a requirement that evidence of Lujan's intent to commit a violent felony be presented to warrant a defense of habitation instruction.

**{10}**      Self-defense and defense of habitation are virtually identical, *State v. Bailey*, 1921-NMSC-009, ¶ 30, 27 N.M. 145, 198 P. 529, and it is well-established that self-defense focuses on the subjective intent of the *defendant*. *See Coffin*, 1999-NMSC-038, ¶ 15 (indicating that the subjective element of self-defense focuses on the perception of the defendant at the time of the incident). Defense of habitation employs the same focus with regard to the subjective prong; the relevant inquiry lies in the defendant's own subjective perception of the intruder's intentions, rather than interpreting the intruder's intent itself. By asserting that evidence of the victim's intent is required, the State misstates the law governing defense of habitation. UJI 14-5170 contains no reference to the intruder's intent; instead, the instruction mentions only the defendant's perception of what is happening. The State's shifted emphasis is not supported by the language of the UJI.

**{11}**      Our case law is also clear that the defendant's interpretation of the victim's actions is the relevant criterion in a defense of habitation inquiry. In *State v. Couch*, 1946-NMSC-047, ¶ 44, 52 N.M. 127, 193 P.2d 405, our Supreme Court decided that the defendant was entitled to a defense of habitation instruction because he could have believed that the person attacking his home intended to enter and commit violence against the occupants. In *Couch*, the defendant, whose home had been subjected to other attacks and invasions, awoke late one night while his home was the target of vandals throwing rocks. *Id.* ¶ 2. The defendant shot at the intruders and killed one of them. *Id.* The Court concluded that the defendant was entitled to a defense of habitation instruction: "When one's home is attacked in the middle of a dark night . . . the householder, being unable to determine what weapons the [unknown] assailants have . . . may pursue his adversaries till he finds himself out of danger." *Id.* ¶¶ 44, 49.

**{12}**      We interpret *Boyett* to stand not for the proposition that there must be evidence of the intruder's intent or that the victim intended to commit a violent felony, but solely whether evidence exists that could give rise to a defendant's belief that commission of a felony of a violent nature was imminent. The instruction must be given when the evidence

4

presented at trial, viewed in the light most favorable to giving the instruction, supports Defendant's alleged belief that he or his home was subject to the threat of a violent felony.

**{13}** According to the evidence, Lujan arrived at Defendant's door at approximately 1:30 a.m. and was pounding on the door loudly enough to rouse Defendant from sleep and threateningly enough to cause Defendant to arm himself. Despite yelling a request that the intruder identify himself, Defendant received no response before firing the fatal shot.

**{14}** Evidence at trial indicated that Lujan was in the process of opening the door when he was shot. Expert testimony suggested, based on spatter patterns of Lujan's blood on the hinges and frame of the door, that the door could have been anywhere between one and four inches open when Defendant fired the fatal shot. Because there is no evidence that Defendant opened the door, it is reasonable to infer from the facts that Lujan did. One of the investigating officers testified that he believed Lujan was "trying to gain entry" into Defendant's home.[2] Defendant's father testified that when he visited the residence the day after the shooting, he observed that the lock on the door had been damaged. This evidence, considered in the light most favorable to giving the instruction, *Skippings*, 2011-NMSC-021, ¶ 10, satisfies *Boyett*'s requirement that some evidence show that the intruder was attempting to force entry into Defendant's home. 2008-NMSC-030, ¶ 23. It was therefore adequate to support an assertion by Defendant that he reasonably believed that a violent felony was about to occur in his home. Confronted with a violent and unauthorized attempt of an unknown actor to enter his home, and in the absence of the intruder's response to Defendant's request to identify himself, Defendant's actions could be found to be objectively reasonable, as discussed more completely below. We therefore conclude that the district court erred in refusing Defendant's requested defense of habitat instruction.

## 2. Intent to Kill

**{15}** The State incorrectly asserts that Defendant is required to prove he had an intent to kill Lujan in order to receive a defense of habitation instruction. The district court did not deny Defendant's requested defense of habitation instruction based on Defendant's lack of intent to kill. In fact, it appears that the State did not raise this argument below. The State suggests, however, that we affirm the district court's decision using the right for any reason doctrine. While we may affirm the district court on grounds not relied on by it, we may not do so if it would result in unfairness to the appellant. *State v. Gallegos*, 2007-NMSC-007, ¶ 26, 141 N.M. 185, 152 P.3d 828. Because we conclude that adding an "intent to kill" element to defense of habitation would be inappropriate, we decline the State's invitation to affirm on that ground.

**{16}** According to UJI 14-5170, it must appear to the defendant that it is "necessary to kill

---

[2]This came to light as impeachment evidence; defense counsel impeached the officer using prior statements made regarding Lujan's actions that evening.

5

the intruder to prevent the commission of [a violent felony]." In *Bailey*, our Supreme Court noted, in dicta, that the right to kill in self-defense or defense of habitation was not at issue in the case and that the defendant was not entitled to have that issue presented to the jury because the defendant absolutely denied killing the victim. 1921-NMSC-009, ¶¶ 18, 31 (noting that the defendant "never intended to kill [the intruder], did not attempt to kill him, and did not kill him").

**{17}** *Bailey* is inapposite to the case before us, and the State's reliance on it is misplaced. Defense counsel argued at trial that Defendant may have intended the shot to be a warning shot, and that both the single shot fired and the location of the shot indicated that Defendant did not intend to kill the intruder. He does not contend that he did not shoot the victim or that he did not intentionally pull the trigger. The State now uses these arguments to assert that Defendant is not entitled to a defense of habitation instruction because he had no intent to kill the intruder, contrary to the UJI which requires that the defendant believe it is "necessary to kill the intruder." *See* UJI 14-5170.

**{18}** The State's reading of *Boyett*, UJI 14-5170, and *Bailey* misinterprets the language therein by suggesting that a belief that it is necessary to use deadly force to prevent commission of a violent felony equates to an intent to kill an intruder. The two are not equivalent; an intent to kill pertains to a desired result while a belief that it is necessary to use deadly force relates to the means by which that result may be reached. The focal point of the jury instruction's "necessary to kill" language lies on the defendant's intent to prevent the commission of the violent felony using whatever force—including deadly force—is necessary. The explicit language of UJI 14-5170 therefore requires that the defendant believe deadly or lethal force is necessary to prevent the commission of a violent felony. "The inquiry in a self-defense claim focuses on the reasonableness of [a] defendant's belief as to the apparent necessity for the force used to repel an attack." *State v. Reneau*, 1990-NMCA-119, ¶ 6, 111 N.M. 217, 804 P.2d 408.

**{19}** Under UJI 14-5170, once a defendant reasonably holds the belief that it is necessary to use lethal force to prevent the felony and defend his habitation, he has satisfied the second half of the subjective element of defense of habitation. This belief can be inferred from circumstantial evidence. *Cf. State v. Duarte*, 1996-NMCA-038, ¶ 7, 121 N.M. 553, 915 P.2d 309 (acknowledging that the defendant's fear in self-defense context can be inferred from circumstantial evidence); *State v. Wood*, 1994-NMCA-060, ¶ 13, 117 N.M. 682, 875 P.2d 1113 (pointing out that subjective elements are "rarely established by direct evidence and generally must be proven by circumstantial or factual inferences"). In this case, a jury could reasonably conclude that Defendant exhibited a belief that it was necessary to use deadly force by picking up his gun and firing it. Regardless of whether he intended for that particular shot to be lethal, the firing of the shot under the circumstances exhibited a willingness to use deadly force. *See Black's Law Dictionary* 760 (10th ed. 2014) (defining "deadly force" as a "[v]iolent action known to create a substantial risk of causing death or serious bodily harm"). If the first subjective element is met, and the choice to use deadly force is reasonable, the elements of the defense are met, and the killing is legally justified.

6

The existence of any evidence to support the giving of a defense of habitation instruction, however slight, provides an adequate basis for giving the instruction. *State v. Heisler*, 1954-NMSC-032, ¶ 23, 58 N.M. 446, 272 P.2d 660 ("[W]here self-defense is involved in a criminal case and there is any evidence, although slight, to establish the same, it is not only proper for the court, but its duty as well, to instruct the jury fully and clearly on all phases of the law on the issue that are warranted by the evidence[.]"). Because the evidence was sufficient to entitle Defendant to a defense of habitation instruction and that instruction was not given, we reverse. *See State v. Salazar*, 1997-NMSC-044, ¶ 50, 123 N.M. 778, 945 P.2d 996 ("Failure to give an instruction which is warranted by the evidence is not harmless error.").

## B. Involuntary Manslaughter Instruction

**{20}** There are three circumstances in which an involuntary manslaughter instruction is warranted: (1) "the commission of an unlawful act not amounting to a felony"; (2) "the commission of a lawful act that might produce death, in an unlawful manner"; or (3) "the commission of a lawful act that might produce death without due caution and circumspection." *State v. Henley*, 2010-NMSC-039, ¶ 14, 148 N.M. 359, 237 P.3d 103 (internal quotation marks and citation omitted). "An involuntary manslaughter instruction is proper only where there is evidence of an unintentional killing and a mens rea of criminal negligence[.]" *Id.* ¶ 22. Criminal negligence has been described in many different ways. It exists where there is a conscious disregard of a substantial and unjustifiable risk that harm will result from certain conduct. *Id.* ¶ 16. It exists where a person acts with willful disregard of the rights or safety of others and in a manner that endangers any person or property. *Id.* It also exists where a person's actions are so reckless, wanton, and willful that they show an utter disregard for the safety of others. *Id.* Defendant requested an instruction pursuant to the third category of involuntary manslaughter instruction. Because we have held that a defense of habitation instruction was available to Defendant, the jury could have found that his shooting Lujan was in the commission of a lawful act, but was done without due caution or circumspection. *See State v. Romero*, 2005-NMCA-060, ¶ 17, 137 N.M. 456, 112 P.3d 1113.

**{21}** Looking at the evidence in the light most favorable to giving the instruction, we conclude that the trial testimony would establish that Defendant knew that an intruder was on the other side of the door and that, because he was pounding on the door, the intruder was within an arm's length of the door. Despite having at least this much knowledge, Defendant fired a shot through the door. The jury could have determined that Defendant was criminally negligent because firing a gun at the door while someone was on the other side of it was "willful disregard of the rights or safety of others" and endangered that unknown intruder. *Henley*, 2010-NMSC-039, ¶ 16 (quoting UJI 14-133 NMRA) (internal quotation marks omitted). The jury also could have inferred that Defendant unintentionally killed the intruder based on Defendant's theory that he fired a warning shot, *Duarte*, 1996-NMCA-038, ¶ 7 (stating that intent can be inferred), and evidence that Defendant only shot once, shot high into the door, and requested identification before he fired the shot. Because the jury could have found that Defendant committed a lawful act, and unintentionally killed the victim

while acting criminally negligently, we conclude that an involuntary manslaughter instruction should have been given.

## III.    CONCLUSION

**{22}**    Having decided that, when considering the evidence in the light most favorable to giving the instructions, there was sufficient evidence to support the instructions, we conclude that the district court erred in refusing Defendant's request for a defense of habitation instruction and involuntary manslaughter instruction. We therefore reverse.

**{23}    IT IS SO ORDERED.**

 

_____
**RODERICK T. KENNEDY, Judge**

**WE CONCUR:**


_____
**MICHAEL D. BUSTAMANTE, Judge**


_____
**LINDA M. VANZI, Judge**