This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-35758

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**HECTOR B. TORRES,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LUNA COUNTY**
**J.C. Robinson, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Charles J. Gutierrez, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Aja Oishi, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**VANZI, Judge.**

**{1}** Defendant, Hector Torres, appeals his conviction for second-degree murder pursuant to NMSA 1978, Section 30-2-1(B) (1994). Defendant makes three arguments: (1) failure to instruct on defense of habitation and defense of another constituted fundamental error, (2) the State did not prove beyond a reasonable doubt that he did not act in self-defense, and (3) the district court erred by permitting the State to cross-examine him with certain prior convictions. We affirm.

**Background**

**{2}**     Defendant, his girlfriend, Renee Smith, Victor Porras (Victim), and Porras' long-term girlfriend, Anna Nevarez, were all friends, acquainted through the use and sale of prescription drugs. Defendant and Smith stayed with Victim and Nevarez at Victim's residence from December 1 to December 5, 2014. For reasons that are unclear in the record, Defendant and Smith rented a room at the Butterfield Stage Motel (Butterfield) on December 6. On December 8, 2014, Victim and Nevarez were withdrawing from methamphetamine and marijuana, and were attempting to obtain money and/or drugs. They became aware that Defendant and Smith were staying at the Butterfield and went there to ask for money or drugs. While at the Butterfield an argument ensued between Defendant and Victim, and, during the argument, Defendant picked up a knife and stabbed Victim in the chest. Nevarez drove Victim to the Mimbres Memorial Hospital (MMH). A few days later, Victim died as a result of his injury.

**{3}**     On the afternoon of December 8, the police were dispatched to MMH and initiated an investigation into Victim's injuries. Nevarez initially told police the incident occurred at another location. A third party later informed the police that the incident might have occurred at the Butterfield. Police dispatched investigators to the Butterfield on December 9, where they discovered a trail of blood leading to Defendant's motel room. After entering the motel room, police found additional drops of blood on the bathroom sink and on an armchair but did not collect any blood samples. During the investigation, the police learned that Defendant had been staying in the room on the date of the incident. They made contact with Defendant and Smith on December 15 and transported them to the police station for questioning. Smith told police that Defendant put two knives into the console of her vehicle the morning of the arrest. Defendant invoked his *Miranda* rights and did not give any statements. Police searched the vehicle and found two knives in the console. The knives were sent to a lab for testing. The presence of human blood was detected on one of the knives; however, there was not enough blood present for DNA testing. Defendant was charged with second-degree murder and tampering with evidence.

**{4}**     At trial, Defendant put on a theory of self-defense and defense of another. The State and Defendant put on conflicting testimony regarding whether Defendant was defending himself or others when he stabbed Victim.

**{5}**     Nevarez testified that at approximately 11:30 a.m., she and Victim were driving when they saw Smith's car parked at the Butterfield and stopped to ask Defendant and Smith for drugs. According to Nevarez, she went to speak with them alone and when she entered the room, Smith walked quickly into the bathroom and remained there for the remainder of the visit. Nevarez testified that Defendant asked Victim to join them inside his motel room. Nevarez then called to Victim from the doorway of the room and Victim came inside. Nevarez explained that after Defendant and Victim began having a conversation about some missing items, Defendant became defensive, "like [they] were accusing him of stealing from [them]. Nevarez noticed that their "voices were getting loud" and they "started getting into a scene." Nevarez testified that Defendant told

Victim and Nevarez to get out and Victim began walking towards Nevarez, who was near the doorway. Victim—still arguing with Defendant—opened the door and left the room with Nevarez following. After taking a few steps out the door, Victim turned around and started confronting Defendant again. Nevarez testified that at this point she was in the doorframe between Defendant and Victim and she pushed Victim, in an attempt to get him to leave. Victim was pushing back against her hands with the force of his chest. Defendant at this point was now directly behind Nevarez and was so close she could feel his breath against her neck. According to Nevarez, both Defendant and Victim were acting as if they were going to attack each other. Eventually, Nevarez saw that Victim turned around, walked away with his hands on his chest, and saw Victim's white shirt was staining red, so she got him into the car and drove him to the hospital.

{6}     Defendant provided the following alternative narrative. Nevarez came to the Butterfield around 11:30 a.m. and asked Smith for money. Smith told Nevarez that they did not have any. Next to Smith were a few bottles of prescription medication on top of a table. Nevarez then left. Around 12:00 p.m. Defendant dropped his truck off at the mechanic's, went to lunch, and then had a friend drop him off back at the Butterfield. Nevarez and Victim came back to Defendant's motel room sometime after Defendant returned and asked again for money. Smith was disrespectful to Victim. Victim struck Smith, who was holding her baby, in the face. Defendant became enraged at Victim's actions, jumped up, and pushed Victim. Victim swung at Defendant, who put his arm up and blocked the strike. Nevarez then got between the two of them. Victim swung at Defendant again. Defendant backed up until he had nowhere else to go. Defendant was afraid of Victim due to the size difference between them and Defendant's belief that Victim was aggressive when coming off methamphetamine. Victim was approximately twenty-nine years old, weighed 266 pounds, and was over six feet tall. Defendant was sixty-two years old, 150 pounds, and five feet, eight inches tall. Defendant "did the only thing [he] could. [Defendant] picked up th[e] knife from on top of the table, and [] jabbed it at [Victim's] chest and stopped him from coming at [Defendant], and stop he did." Defendant claimed he was afraid for his own life, and for the life of "[his] two girls." Defendant and Smith left the Butterfield after the incident and did not attempt to clean the room or contact authorities.

{7}     Smith also testified regarding the activity within the room on December 8, 2014. Nevarez came to the Butterfield and was frantic about talking to Defendant. Nevarez told Defendant that she needed him to "come through with what it was that she wanted." Victim then came into the room and an argument started between Defendant and Victim. Smith was holding her baby, who started crying due to the argument. Smith was then "a bit disrespectful" in telling Victim that she wanted him to get out. Victim told Smith to shut up and hit her in the face, on the nose, causing her to bleed. Defendant stood up and told Victim and Nevarez to "get the hell out." Defendant, Victim, and Nevarez then walked out of the room. Smith then went to the bathroom with her baby to clean the blood off both of them. Smith heard the argument continuing outside of the room. After the argument ended, Defendant was the only person who entered the bathroom. Defendant and Smith vacated the Butterfield and did not contact the authorities.

**{8}** The jury was instructed on (1) second-degree murder; (2) voluntary manslaughter (in the alternative, as a lesser-included offense); (3) defense of self; and (4) defense of another (Smith). The jury found Defendant guilty of second-degree murder. This appeal followed.

**Discussion**

**I.** **Defendant Was Not Entitled to Defense of Habitation or Defense of Another Jury Instructions[1]**

**A.** **Standard of Review**

**{9}** Defendant concedes that he did not object to the jury instructions at trial. In the absence of preservation, this Court reviews jury instructions for fundamental error. *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134. When reviewing jury instructions for fundamental error, we first apply the standard for reversible error by determining if "a reasonable juror would have been confused or misdirected by the jury instruction." *State v. Cunningham*, 2000-NMSC-009, ¶ 14, 128 N.M. 711, 998 P.2d 176 (internal quotation marks and citation omitted). "A defendant is entitled to an instruction on his or her theory of the case if evidence has been presented that is sufficient to allow reasonable minds to differ as to all elements of the offense." *State v. Boyett*, 2008-NMSC-030, ¶ 12, 144 N.M. 184, 185 P.3d 355 (internal quotation marks and citation omitted). "Failure to instruct the jury on a defendant's theory of the case is reversible error only if the evidence at trial supported giving the instruction." *Id.* ¶ 12; s*ee State v. Anderson*, 2016-NMCA-007, ¶¶ 7-17, 364 P.3d 306 (holding that where evidence required presentation of self-defense theory, the omission of a no-retreat instruction was fundamental error).

**B.** **Defense of Habitation**

**{10}** Defendant argues that there was sufficient evidence of each element of defense of habitation. We disagree.

**{11}** Defense of habitation requires proof that "(1) Defendant believed that the commission of a [violent] felony in Defendant's home was immediately at hand, (2) Defendant believed it was necessary to use deadly force against the intruder to prevent the commission of the felony, and (3) Defendant acted [r]easonably." *State v. Baxendale*, 2016-NMCA-048, ¶ 22, 370 P.3d 813; *see* UJI 14-5170 NMRA ("justifiable homicide; defense of habitation"); *Boyett*, 2008-NMSC-030, ¶ 21 (explaining that the felony the defendant acted to prevent must be a violent felony); Defense of habitation justifies killing an intruder who is physically in the home as well as "an intruder who is assaulting the defendant's home with the intent of reaching its occupants and

---

1 We do not address Defendant's argument that the errors in the jury instructions constituted cumulative error as we hold there was no error. *See State v. Martin*, 1984-NMSC-077, ¶ 17, 101 N.M. 595, 686 P.2d 937 ("Cumulative error requires reversal of a defendant's conviction when the cumulative impact of errors which occurred at trial was so prejudicial that the defendant was deprived of a fair trial.")

committing a felony against them." *Boyett*, 2008-NMSC-030, ¶ 17. To determine if there was evidence of a violent felony, the court looks to see if there is any "evidence presented at trial, viewed in the light most favorable to giving the instruction, [which] supports [the d]efendant's alleged belief that he or his home was subject to the threat of a violent felony." *State v. Cardenas*, 2016-NMCA-042, ¶ 12, 380 P.3d 866. A defendant's belief is sufficient so long as it is reasonable, even if the belief turns out to be mistaken. *See State v. Couch*, 1946-NMSC-047, ¶ 32, 52 N.M. 127, 193 P.2d 405. The law also "requires that the defendant believe deadly or lethal force is necessary to prevent the commission of a violent felony." *Cardenas*, 2016-NMCA-042, ¶ 18.

**{12}** Here, Defendant alleges that the jury could have inferred that Victim had the intention to commit various violent felonies, including robbery, aggravated assault, assault with the intent to commit a violent felony, abuse of child, and false imprisonment. In support of these claims, Defendant points to the following facts: Nevarez and Victim were attempting to obtain drugs or money for drugs. On December 8, they had asked Defendant and Smith for money. Nevarez and Victim were "frantic," "on edge," and "in a bad mood" due to drug withdrawal. When Smith asked Victim to leave, Victim struck Smith in the face, causing her to bleed. When Defendant asked Victim to leave, Victim exited the room and then attempted to reenter the room, by standing in the doorway.[2] Defendant testified that he was afraid for his life and the lives of Smith and the baby. Defendant argues that there was evidence of the reasonableness of this fear, because Defendant attributed his fear to Victim's larger size, younger age, alleged greater strength, and reputation for aggressive behavior. We conclude these facts do not support a reasonable belief that any of the alleged violent felonies were immediately at hand. We address each felony in turn.

**{13}** Robbery requires proof of the intent to take something of value "from the immediate control of another, by use or threatened use of force." Section 30-16-2. Here, the evidence does not show that Defendant had a reasonable belief that a theft was imminent. On appeal, Defendant argues that Nevarez and Victim could have intended to steal drugs or money. However, Defendant never testified that he feared Victim was there to take drugs or money from him. Even if he had, Nevarez' testimony indicates only that they asked for money so that they could then purchase or "score" drugs. There was no evidence that upon the refusal of money Victim or Nevarez threatened Defendant or Smith, nor was there evidence that Victim or Nevarez attempted to take any drugs or money. Additionally, Defendant and Victim were not fighting about money or drugs; they were fighting over either the battery to Smith, or the missing pants/glasses. Neither reason would give Defendant a reasonable belief that Victim possessed an intent to steal drugs or money from Defendant.

**{14}** Aggravated assault and assault with an intent to commit a felony require proof of an assault[3] and an enhancing element, such as the use of a deadly weapon or an intent

2 The brief in chief characterized this as a refusal to leave, but the evidentiary record does not support that characterization.
3Assault consists of either:
      A.     an attempt to commit a battery upon the person of another;

to commit a felony, including murder, robbery and burglary. NMSA 1978, § 30-3-2(A), (C) (1963) ("aggravated assault") (requiring proof of an unlawful assault with a deadly weapon or with the intent to commit a felony); NMSA 1978, § 30-3-3 (1977) ("assault with intent to commit a violent felony") (requiring proof of an intent to "kill or commit any murder, mayhem, criminal sexual penetration in the first, second or third degree, robbery or burglary"). Here, there was no evidence that Victim had any intent beyond a simple battery[4] or assault on Defendant or Smith. There was no evidence that Victim (1) threatened to kill or seriously injure another, (2) used a deadly weapon, or (3) intended to commit a violent felony in the room at the Butterfield. Additionally, size differences alone do not indicate that the victim might inflict great bodily harm or death; it merely indicates that the victim would be able to follow through on a threat, if one had occurred. *See State v. Duarte*, 1996-NMCA-038, ¶ 10, 121 N.M. 553, 915 P.2d 309 (holding that although the victim had a reputation as a fighter when intoxicated and was intoxicated, these facts did not make the defendant's use of deadly force reasonable where there was no evidence the victim ever seriously injured anyone). There was evidence that Victim was aggressive when coming off methamphetamine; however, no evidence was presented that he had ever seriously injured anyone while in this state. Nevarez testified that Victim did not have a weapon, and the police found no weapons on Victim's person or in his vehicle. Victim did not make any gestures or say anything implying an intent to murder anyone in the room. Moreover, as stated above, there was no evidence for which Defendant could have reasonably believed that Victim intended to rob Defendant. To the extent there was evidence that Victim struck Smith and attempted to strike Defendant, such evidence would support only a simple battery and assault. In sum, there was no evidence that Defendant had a reasonable belief that an aggravated assault or assault with intent to commit a felony was imminent.

**{15}**     Child abuse requires proof that the child be "placed in a situation that may endanger the child's life or health." NMSA 1978, § 30-6-1(D)(1) (2009). Here, there was no evidence that Smith's baby was in harm's way after Victim struck Smith. The specific location of the baby during the events is in question; she was either in Smith's arms or was in a playpen away from the argument. However, while testimony indicated that Smith was holding the baby when Victim allegedly hit her in the face, Smith immediately removed herself to the bathroom for the remainder of the altercation. Victim did not threaten or try to harm the baby in any way. All the evidence indicated Victim aimed his aggression at Smith and then Defendant—not the baby. Nor was there evidence that Victim was using any weapon that could have inadvertently harmed the baby. *See State v. McGruder,* 1997-NMSC-023, ¶¶ 37-38, 123 N.M. 302, 940 P.2d 150 (upholding child abuse conviction where the defendant aimed a gun at and threatened to shoot a child's mother when the child was behind the mother, putting child in the direct line of physical danger), *abrogated on other grounds by State v. Chavez*, ¶¶ 16, 47 n.1, 146 N.M. 434,

---

B.         any unlawful act, threat or menacing conduct which causes another person to reasonably believe that he is in danger of receiving an immediate battery; or

C.         the use of insulting language toward another impugning his honor, delicacy or reputation." NMSA 1978, § 30-3-1 (1963).

4"Battery is the unlawful, intentional touching or application of force to the person of another, when done in a rude, insolent or angry manner." NMSA 1978, § 30-3-4 (1963).

211 P.3d 891. None of this evidence would give Defendant a reasonable belief that Victim placed the baby in a situation that might endanger her life or health.

**{16}** Lastly, false imprisonment requires proof of an intent to confine or restrain another. Section 30-4-3. Here, there was no evidence of such an intent. While Victim may have been standing in the doorway during the altercation that led to the stabbing, that alone is insufficient. Evidence showed that Victim was trying to reenter the room to reengage hostilities, not to prevent others from leaving. Without some evidence that Victim's intent was to prevent Defendant and Smith from leaving, or Defendant and Smith were in fact attempting to leave, Defendant could not have reasonably believed Victim possessed an intent to confine or restrain the other occupants of the room.

**{17}** Because we conclude there was no evidence of a violent felony that Defendant could have been attempting to prevent, we need not address any other element of defense of habitation. Defendant was not entitled to have the district court sua sponte instruct the jury on defense of habitation.

## C.    Defense of Another

**{18}** Defendant argues the evidence supporting defense of another regarding Smith supported the same instruction regarding the baby. We disagree.

**{19}** An instruction on defense of another requires (1) "an appearance of immediate danger of death or great bodily harm to [another] as a result of [the victim's actions]"; (2) "the defendant believed [there] was [an] immediate danger of death or great bodily harm from [the victim]" and acted to prevent that harm; and (3) Defendant's belief and actions were reasonable. UJI 14-5172 NMRA ("Justifiable homicide; defense of another"); *Duarte*, 1996-NMCA-038, ¶ 3. "It is well established that deadly force may not be used in a situation involving simple battery or in a struggle in which there has been no indication that death or great bodily harm could result." *Id.* ¶ 4.

**{20}** Here, there was no evidence that Defendant's purported belief of an immediate danger of death or great bodily injury to the baby was reasonable. Defendant points out that Smith was holding the baby when Victim struck her, and that Defendant testified he was afraid for the life of the baby. However, as stated above, there was no indication that after the initial battery on Smith the baby was in any danger from Victim—the baby was either taken into the bathroom or placed in the playpen, removing the child from the area of the altercation. The record did not show that Victim attempted to harm the baby at any point. In fact, all further violence was, by all accounts, solely between Defendant and Victim. There was no indication that if Victim had beaten Defendant, he would have then turned his aggression on Smith, let alone to the baby. As no evidence was presented that the baby was put at imminent risk of harm, Defendant was not entitled to the defense of another instruction in regard to the baby. *See State v. Jernigan*, 2006-NMSC-003, ¶ 3-7, 139 N.M. 1, 127 P.3d 537 (holding that even where someone was beating another person in the head, the defendant did not possess a reasonable belief

that there was an imminent threat of great bodily harm or death and was not entitled to an instruction on defense of another).

## II.       The Evidence Presented Was Sufficient

**{21}**  Defendant argues that the State did not prove beyond a reasonable doubt that Defendant did not act in self-defense. Again, we disagree.

**{22}**  "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Largo*, 2012-NMSC-015, ¶ 30, 278 P.3d 532 (internal quotation marks and citation omitted). "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citation omitted). "In reviewing whether there was sufficient evidence to support a conviction, we resolve all disputed facts in favor of the [s]tate, indulge all reasonable inferences in support of the verdict, and disregard all evidence and inferences to the contrary." *Id.* (internal quotation marks and citation omitted). "Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *State v. Garcia*, 2009-NMCA-107, ¶ 21, 147 N.M. 150, 217 P.3d 1048 (internal quotation marks and citation omitted).

**{23}**  The jury was instructed that to find Defendant guilty of second-degree murder, the State must prove beyond a reasonable doubt the following elements:

1.       [D]efendant killed [Victim];

2.       [D]efendant knew that his acts created a strong probability of death or great bodily harm to [Victim];

3.       [D]efendant did not act as a result of sufficient provocation;

4.       [D]efendant did not act in self[-]defense;

5.       [D]efendant did not act in defense of another;

6.       This happened in New Mexico on or about the 8th day of December, 2014.

The self-defense instruction then provided:

The killing is in self[-]defense if:

1.       There was an appearance of immediate danger of death or great bodily harm to [D]efendant as a result of [Victim] hitting Renee Smith and threatening Renee Smith and [D]efendant with further harm; and

2.      [D]efendant was in fact put in fear by the apparent danger of immediate death or great bodily harm and killed [Victim] because of that fear; and

3.      A reasonable person in the same circumstances as [D]efendant would have acted as [D]efendant did.

The burden is on the state to prove beyond a reasonable doubt that [D]efendant did not act in self-defense. If you have a reasonable doubt as to whether [D]efendant acted in self[-]defense you must find [D]efendant not guilty.

The district court further directed that "a person who is threatened with an attack need not retreat." The final instruction on the issue of self-defense provided:

Self[-]defense is not available to [D]efendant if he started the fight or agreed to fight unless:

1.      [D]efendant was using force which would not ordinarily create a substantial risk of death or great bodily harm; and

2.      [Victim] responded with force[,] which would ordinarily create a substantial risk of death or great bodily harm;

OR

1.      [D]efendant tried to stop the fight;

2.      [D]efendant let [Victim] know he no longer wanted to fight; and

3.      [Victim] became the aggressor.

Defendant argues:

[H]e had the right and the privilege to use force to exclude a man who, by all accounts, was coming down from a methamphetamine binge; who was seeking more narcotics; who was more than four inches taller than [Defendant], 100 pounds heavier that [Defendant], and half [Defendant's] age; and who was aggressively trying to re-enter the home after being told to leave.

However, Defendant fails to address any of the evidence that Defendant was not acting in self-defense, including his own testimony. Defendant testified that while everyone was inside the motel room, Smith disrespected Victim, who struck her in the face. Defendant—upset at Victim's actions—pushed Victim, who then swung at Defendant a

few times. Defendant—fearing for his own life—grabbed the knife and stabbed Victim. From these facts, the jury could have reasonably determined there was no forced entry into the residence and that, by pushing Victim, Defendant was the first aggressor. Alternatively, the jury could have credited Nevarez' testimony that Victim exited the room and then attempted to reengage Defendant. From that, a reasonable jury could have determined that Victim's actions indicated, at worst, the threat of a simple battery against the occupants of the room and therefore Defendant's fear was unreasonable. For these reasons, we hold there was sufficient evidence that Defendant did not act in self-defense.

### III. The District Court Did Not Commit Plain Error by Permitting Cross-Examination of Defendant on his 1986 and 1988 Convictions

**{24}** In 1986, Defendant pled guilty to aggravated assault with intent to commit a violent felony upon a peace officer, aggravated assault upon a peace officer, and possession of a deadly weapon by a prisoner. Defendant was sentenced to fifteen years imprisonment, and released in 2008. The conviction was therefore thirty years old, while his release was only nine years prior to the time of trial. In 1988, Defendant was convicted of escape from the penitentiary. He was sentenced to eight years imprisonment, to be served concurrently with the previous sentence, and released in 2012. The conviction was therefore twenty-eight years old, while his release was only four years prior to the time of trial. Additionally, Defendant pled guilty to possession of a controlled substance (methamphetamine) and tampering with evidence, in February 2016. The record does not indicate that Defendant had been sentenced at the time of trial. Pursuant to NMSA 1978, Section 30-32-23(F) and NMSA 1978, Section 30-22-5(B)(2) (2003), both possession of methamphetamine and tampering with evidence are fourth degree felonies for which the basic sentence is eighteen months imprisonment. NMSA 1978, § 31-18-15(A)(13) (2016, amended 2019).

**{25}** On April 4, 2016, the State gave notice of its intent to use these three prior convictions during trial. Defendant orally moved the court to limit the use of the convictions to the fact that Defendant has felonies and prohibit discussion of their substance, which the district court denied. During trial, the State used all three convictions to impeach Defendant, and defense counsel made no objection. Defendant then submitted a motion for new trial on April 29, 2016 (which included the argument that the district court improperly allowed the State to use the 1986 and 1988 convictions), which the district court denied. Defendant argues that under these facts the issue was preserved and that it was an abuse of discretion for the district court to allow the State to impeach Defendant with the 1986 and 1988 convictions. The State correctly asserts that the issue was not preserved and that Defendant is entitled to only plain error review; however, the State then analyzes the issue under an abuse of discretion standard. We agree with the State that the correct standard is plain error and hold there was no such error for the reasons below.

**{26}** Rule 11-103(A)(1) NMRA provides that an error to admit or exclude evidence only occurs "if the error affects a substantial right of the party and[,] if the ruling admits

evidence, the party, on the record (a) timely objects or moves to strike, and (b) states the specific ground, unless it was apparent from the context." A timely objection is one made at the time the evidence is presented and entered into evidence. *State v. Onsurez*, 2002-NMCA-082, ¶ 19, 132 N.M. 485, 51 P.3d 528 (holding that a statement during the defendant's closing was not sufficient to preserve the issue); *State v. Carrillo*, 2017-NMSC-023, ¶ 23, 399 P.3d 367 (holding a motion in limine was not sufficient to preserve evidentiary issues for appeal). Defendant did not object during trial to the use of his prior convictions for impeachment purposes. Neither the pre-trial ruling nor the motion for a new trial are sufficient to preserve the issue. We therefore review for plain error. Rule 11-103(E) ("A court may take notice of a plain error affecting a substantial right, even if the claim of error was not properly preserved.").

**{27}** "Plain error is an exception to the general rule that parties must raise timely objection[s] to improprieties at trial, and therefore it is to be used sparingly." *State v. Dylan J.*, 2009-NMCA-027, ¶ 15, 145 N.M. 719, 204 P.3d 44 (internal quotation marks and citation omitted). In reviewing for plain error, we "look at whether the testimony affected a substantial right of [the d]efendant[;]" however, we apply the doctrine "only if we have grave doubts about the validity of the verdict, due to an error that infects the fairness or integrity of the judicial proceeding." *Id.* (internal quotation marks and citation omitted). "In determining whether there has been plain error, we must examine the alleged errors in the context of the testimony as a whole." *Id.* (omission, internal quotation marks, and citation omitted).

**{28}** In this case, we are unpersuaded that the impeachment of Defendant with his prior convictions raises grave doubts about the validity of the verdict. First, it is not immediately apparent that the impeachment was improper. *See* Rule 11-609 (A)-(B) NMRA (providing that a defendant may be impeached with a prior conviction if the prior conviction *or date of release* is less than ten years old and the "probative value of the evidence outweighs its prejudicial effect"). The release dates for both convictions were less than ten years prior to the 2016 trial. Therefore, had an objection been made, it would have been left to the district court to weigh the probative value against its prejudicial effect. A district court could have found that the prejudice of the 1986 conviction outweighed the probative value due to the remoteness of the conviction and the fact that Defendant pleaded guilty to the previous offenses. *See State v. Conn*, 1992-NMCA-052, ¶¶ 17-18, 115 N.M. 101, 847 P.2d 746 (holding that there was an abuse of discretion where a conviction occurred nine years prior to trial and the defendant had pled guilty to the previous offense). On the other hand, the district court could also have determined that the prior convictions, including the 1986 conviction, were highly probative, given that the jury's assessment of witness credibility, in the context of the three conflicting accounts of the events leading up to Victim's death, was crucial to the jury's verdict in this case. *See State v. Trejo*, 1991-NMCA-143, ¶ 15, 113 N.M. 342, 825 P.2d 1252 (stating that when a "trial essentially boil[s] down to a swearing match between [the d]efendant and the victim . . . it be[comes] more, not less, compelling to explore all avenues which would shed light on which of the two witnesses was to be believed" (internal quotation marks and citation omitted)). Based on the

record before us, we cannot say that impeachment of Defendant with his prior convictions constituted plain error.

**Conclusion**

**{29}**  We affirm.

**{30}  IT IS SO ORDERED**.

**LINDA M. VANZI, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Judge**

**BRIANA H. ZAMORA, Judge**